UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA S. GALLAGHER,

        Petitioner,

                                      Civil Action No. 04-CV-71113-DT
v.                                   Honorable Patrick J. Duggan

MICHAEL PIATEK,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITIONER'S
APPLICATION FOR A WRIT OF HABEAS CORPUS**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 7, 2006.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Petitioner Debra S. Gallagher ("Petitioner") filed an application for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 on March 25, 2004. In her application,

Petitioner challenges her conviction for operating under the influence of liquor, second

offense ("OUIL II"), in violation of MICH. COMP. LAWS ANN. § 257.625(1). For the

reasons set forth below, the petition for writ of habeas corpus is denied.

I.     **Factual and Procedural Background**

Petitioner's conviction arose from a three-car accident at approximately 7:30 p.m.

on October 22, 1999, on M-59 in Sterling Heights, Michigan. Prior to the accident,

Petitioner was at work in her office at the Sterling Town Center.  *See* Trial Tr. III at 172

& 187.  At about 5:00 p.m., she left work to purchase a six-pack of beer at a party store.

*See id.* at 187-88.  Petitioner then returned to work to complete some personal business.

*See id.*  Petitioner testified that during the next two hours she consumed two cans of beer

in her office.  *See id.* at 188.  Petitioner then left the office and got into her car, where she

drank another two cans of beer within five minutes.  *See id.*  Petitioner then proceeded to

drive home.  *See id.*

When Petitioner exited the Sterling Town Center parking lot onto M-59, she pulled

out in front of another vehicle, causing the driver of the other vehicle to lock the vehicle's

brakes in order to avoid hitting Petitioner's car.  *See* Trial Tr. I. at 45 & 56. A passenger

in a vehicle driving next to Petitioner's vehicle, noticed that the interior light of

Petitioner's vehicle was illuminated and that Petitioner was looking down and fumbling

with something, as if she was searching for something in her purse.  *See id.* at 45-46.  The

witness testified that the approaching traffic light in the meantime changed to red and that

other cars had stopped at the light.  *See id.* at 46.  According to the witness, Petitioner–

still looking down– continued to increase her speed and slammed into the rear end of one

of the stopped cars.  *See id.*

After the collision, Petitioner exited her vehicle and began walking towards a

nearby Bally's Fitness Center ("Bally's").  *See id.* at 48.  When officers from the Sterling

Heights Police Department subsequently arrived, witnesses described Petitioner and told

them that Petitioner had walked towards the Bally's.  *See id.* at 48 & 79.  At least one

2

witness told the officers that he believed Petitioner may have been drinking.  *See id*. at 82.

Officer Kenneth Mercer then drove his police car to the Bally's where he noticed a

woman matching the witnesses' descriptions standing in the window.  *See id*. at 104.

Officer Mercer entered the Bally's and approached Petitioner.  *See id*. at 105. Officer

Mercer asked Petitioner if she had been involved in the accident and she replied "yes."

*See id*.  Officer Mercer then drove Petitioner back to the scene of the accident, during

which time he smelled intoxicants on Petitioner.  *See id*. at 106.

In the meantime, another Sterling Heights Police Department Officer, Eric Jobe,

conducted an investigation at the scene of the accident.  Officer Jobe ran a license plate

check on Petitioner's car and was advised that Petitioner was the owner.  *See* Trial Tr. II

at 23.  When Officer Mercer returned to the scene of the accident with Petitioner,

Petitioner exited Officer Mercer's car and began talking with Officer Jobe.  *See id*. at 29.

Officer Jobe immediately smelled an extremely strong odor of intoxicants on

Petitioner and noticed that Petitioner was unsteady on her feet, "kind of swaying."  *See id*.

Officer Jobe asked Petitioner if she was the driver of the vehicle that rear-ended the other

car, to which Petitioner answered yes.  *See id*.  Officer Jobe also asked Petitioner if she

had been drinking and she told him that she had consumed five to six beers.  *See id*.

Officer Jobe then placed Petitioner under arrest for drunk driving and drove her to the

police station where Petitioner agreed to submit to a breathalyzer test.  *See id*. at 30.  The

test registered Petitioner's blood alcohol content level as .16.  *See* Trial Tr. I at 126.

Petitioner subsequently was charged with the felony offense of OUIL, third

offense ("OUIL III") in Michigan's 41A District Court.  Petitioner filed a motion to have

the charge reduced to OUIL II, which the district court granted on May 17, 2001.  A jury

trial began on January 16, 2002, and concluded three days later with the jury finding

Petitioner guilty of OUIL II.  On March 26, 2002, the district court sentenced Petitioner to

six months of incarceration followed by two years probation.

The Macomb County Circuit Court affirmed Petitioner's conviction and sentence

on October 1, 2002.  *People v. Gallagher*, No. 2002-1036-AR (Macomb County Circuit

Court).  Petitioner subsequently sought leave to appeal to the Michigan Court of Appeals

and the Michigan Supreme Court, both requests were denied.  *People v. Gallagher*, No.

244437 (Mich. Ct. App. Feb. 12, 2003); *People v. Gallagher*, 469 Mich. 908, 670 N.W.2d

221 (2003).  On March 8, 2004, the United States Supreme Court denied Petitioner's

application for a writ of certiori.  *Gallagher v. Michigan*, 541 U.S. 904, 124 S. Ct. 1606

(2004).  Seventeen days later, Petitioner filed the pending habeas corpus petition.

Petitioner seeks the issuance of a writ of habeas corpus on the following grounds:

I.      The petitioner's right to a speedy trial was denied by the 27 month[s] delay
        between the charge and trial . . .

II.     Petitioner's conviction was obtained in violation of the Fourth and
        Fourteenth Amendments because the trial court failed to suppress evidence
        obtained after petitioner was arrested, confined, and transported without a
        warrant, probable cause, or reasonable suspicion to believe that she
        committed a crime.

III.    Petitioner's conviction was obtained by statements made by petitioner
        (regarding the consumption of alcohol and the driving of a vehicle) after she
        was placed within a police car and transported and after she was not free to
        leave in violation of *Miranda v. Arizona.*

IV.    Petitioner's conviction was obtained by statements made by petitioner (regarding the consumption of alcohol and the driving of a vehicle) which were compelled by a state accident reporting statute which provided that such statements would not be admissible into evidence in a criminal trial, in violation of the Fifth, Sixth, and Fourteenth Amendments.

V.    Petitioner was convicted of OUIL II in violation of the *Ex Post Facto* Clause.

VI.    Petitioner's right to due process and her right to appeal were denied when the Macomb County Circuit Court determined that she should not be allowed additional time to file a quality brief. In particular, she was denied the right to raise substantial issues regarding the admissibility of breath test results and the propriety of the trial court's denial of her request for a continuance on the day of trial when the prosecution brought in a witness that it represented would not be testifying (her attorney would have been a witness instead of her attorney had this previously been disclosed).

VII.    The trial court's refusal to grant a continuance on the day of trial after the prosecution announced that it would be calling a witness that it had represented it would not be calling constituted a denial of due process (14th Amendment) to the petitioner and contributed to her conviction because her attorney would have been called as a witness to her sobriety before the incident had she know that this witness (the breath test operator) would have been called by the prosecution.

VIII.    Petitioner's 14th (including due process), Fifth and Sixth Amendment rights were violated because the trial court, when sentencing the defendant, considered her refusal to plead guilty, considered her refusal to admit guilt, considered her exercise of her right to a jury trial and of her right to testify, considered a prior conviction previously determined to be constitutionally invalid, failed to resolve challenges to the accuracy of and considered unconvicted offenses, increased her sentence from four months on a tether to six months in the county jail plus 12 months of house arrest because she failed to accept a pretrial plea offer, failed to provide her attorney with a copy of a presentence investigation report prior to sentencing, relied upon a presentence investigation which was not

conducted in accordance with MCL 771.14, relied upon a
presentence investigation report which was influenced by *ex parte*
communications between the prosecutor and the presentence
investigator, and/or sentenced the defendant to imprisonment beyond
the one year maximum jurisdictional limit.

## II.    Standard of Review

Petitioner's application for habeas relief is governed by the provisions of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132,

110 Stat. 1214 (April 24, 1996); *see Lindh v. Murphy*, 521 U.S. 320, 326-27, 117 S. Ct.

2059, 2063 (1997).  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas

corpus only if she can show that the state court's adjudication of her claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under Section 2254(d), Petitioner must show that the

state court's decision "was either contrary to, or an unreasonable application of, [the

Supreme] Court's clearly established precedents, or was based upon an unreasonable

determination of the facts."  *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-

53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court

has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-

13, 120 S. Ct. 1495, 1523 (2000).  A state court's decision is an "unreasonable application

of" clearly established federal law "if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to

the facts of the prisoner's case."  *Id.* at 413, 120 S. Ct. at 1523.

    With this standard in mind, the Court will proceed to address Petitioner's claims.

III.    **Applicable Law and Analysis**

    A.    **Whether Petitioner's Speedy Trial Rights Were Violated by the 27-
           Months Delay Between the Charge and Trial**

Petitioner claims that her right to a speedy trial was violated as a result of the

twenty seven months delay in bringing her to trial.  The Sixth Amendment guarantees a

criminal defendant the right to a speedy trial. U.S. Const. amend. VI.  The right to a

speedy trial applies to the states through the Fourteenth Amendment.  *Maples v. Stegall*,

427 F.3d 1020, 1025 (6th Cir. 2005).

    To determine whether a speedy trial violation has occurred, courts must consider

the following four factors: (1) the length of the delay from the date of the indictment or

arrest, whichever is earlier, to the date of trial; (2) the reason for the delay; (3) the

defendant's assertion of his or her speedy trial rights; and (4) whether the defendant

suffered any prejudice as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.

Ct. 2182, 2192 (1972); *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455 (1971);

*Maples*, 427 F.3d at 1025-26.  No single factor is determinative, rather a court must

weigh each factor and determine whether a constitutional violation has occurred. *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193. However, "[t]he length of the delay is a threshold requirement . . . If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples*, 427 F.3d at 1025 (citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S. Ct. 2686 (1992)). A delay approaching one year is presumptively prejudicial. *Id*.

The delay of 27 months in this case meets the "uncommonly long" standard. *Maples*, 427 F.3d at 1026 (finding standard met by delay of 25 months). With respect to the second and third *Barker* factors, the Court notes as an initial matter (as the Michigan appellate court also found), that the trial court record "is spare in terms of showing filings made by either party" and fails to designate in many instances why Petitioner's trial was delayed. *See People v. Gallagher*, Case No. 2002-1036-AR, October 2, 2002 Op. and Order at 7. As best this Court can discern from this sparse record, Petitioner asserted her speedy trial rights at the latest on June 18, 2001, when she filed a motion to dismiss based on the delay in the trial. With regard to the cause for the delay, it appears from the record that much delay was caused by Petitioner's filing of numerous motions, including a motion to reduce the charge to OUIL II, a motion to change attorneys, motions to suppress evidence, and a motion to disqualify the trial judge.

As to prejudice, the Supreme Court has identified three defense interests courts should consider: "(1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired." *Maples*, 427 F.3d at

8

1031 (citing *Barker*, 407 U.S. at 532, 92 S. Ct. 2181).  "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532; 92 S. Ct. 2182.

In this case, Petitioner was released pending trial.  While Petitioner contends that she suffered some anxiety and concern as a result of the delay, the Court must take into consideration the fact that for almost the entire delay she stood accused of a misdemeanor, not a felony.  Finally, Petitioner fails to establish any impairment to her defense as a result of any delay.

Petitioner's sole allegation of prejudice to her defense is based on her alleged inability to call her attorney, Gregory Zalecki, as a witness regarding her claimed sobriety at the time of the accident.  As Mr. Zalecki informed the trial court, he saw Petitioner on the day of the accident and she appeared sober to him.  *See* Trial Tr. I at 25.  Petitioner contends that due to the delay in the proceedings, Mr. Zalecki no longer could remember when he observed Petitioner, other than that it was after working hours or after 5:00 p.m.

It is not clear to the Court whether Mr. Zalecki ever asserted that the delay in the trial was the cause for his inability to remember when he saw Petitioner on the day of the traffic accident.  In any event, the Court finds that Mr. Zalecki's testimony concerning Petitioner's sobriety on the day of the accident would not have been exculpatory or even relevant to Petitioner's defense in light of Petitioner's own testimony.  Petitioner testified that before the accident she drank two beers in her office and that no one else was in the office at the time.  *See* Trial Tr. Vol. II. at 188.  She further testified that within five

9

minutes she drank two additional beers alone in her car immediately before she began

driving home. *See id.* Therefore it is unlikely that Mr. Zalecki observed Petitioner after

she consumed her first and second beers; and even more unlikely that he observed her

after she consumed the third and fourth beers. Mr. Zalecki's testimony regarding

Petitioner's apparent sobriety before that time would not have been probative as to her

condition at the time of the accident. The Court therefore concludes that Petitioner fails

to show any prejudice resulting from the passage of time between her arrest and trial.

Based on the above considerations, the Court concludes that the Michigan courts'

adjudication of Petitioner's speedy trial claim was neither "contrary to" nor "involved an

unreasonable application of" Federal law, nor was it "based on an unreasonable

determination of the facts in light of the evidence presented." Thus Petitioner is not

entitled to habeas relief on her claim alleging a violation of her right to a speedy trial.

### B.   Petitioner's Fourth Amendment Claim

Petitioner next claims that the police violated her Fourth Amendment rights by

arresting her without a warrant or probable cause and that therefore the trial court should

have suppressed statements she thereafter made to the police as the fruits of an unlawful

arrest.

The Supreme Court has held that "where the State has provided an opportunity for

full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted

federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95, 96 S.

Ct. 3037, 3052-53 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000).

The Sixth Circuit utilizes a two-step analysis to determine whether a defendant received

an opportunity to fully and fairly litigate his or her Fourth Amendment claim in state

court:

> First, the court must determine whether the state procedural
> mechanism, in the abstract, presents the opportunity to raise a
> fourth amendment claim. Second, the court must determine
> whether presentation of the claim was in fact frustrated
> because of a failure of that mechanism.

*Machacek*, 213 F.3d at 952.

Petitioner's Fourth Amendment claim was the subject of an evidentiary hearing in

state court. Petitioner also presented this claim to the appellate courts. Thus the Court

finds that the state court provided a procedural mechanism through which Petitioner

presented her Fourth Amendment claim. Petitioner does not allege that the presentation

of the claim was in fact frustrated.[1] Therefore this claim is not cognizable on federal

habeas corpus review.

**C.     Petitioner's Fifth Amendment Claims**

In her third claim, Petitioner alleges that statements she made to the police at the

accident scene should have been suppressed because she was not advised beforehand of

her rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 1612

---

[1]While Petitioner complains that she was denied the opportunity to file a "quality"
appellate brief and that as a result she was not able to raise specifically enumerated
challenges on appeal, *see infra*, her challenge to the admission of her statements was not
one of those challenges.

(1966).  In her fourth claim, Petitioner contends that she was compelled into making these statements in violation of her Fifth Amendment right against self-incrimination by Michigan's accident reporting statute,  MICH. COMP. LAWS ANN. §§ 257.622 and 257.624.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination.  *Miranda,* 384 U.S. at 444, 86 S. Ct. at 1612.  The obligation of law enforcement officers to administer *Miranda* warnings to a suspect only arises "where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977).  In *Berkemer v. McCarty*, the United States Supreme Court ruled that, because of the "noncoercive aspect of ordinary traffic stops," "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda.*"  468 U.S. 420, 440, 104 S. Ct. 3138, 3150 (1984).  The Supreme Court concluded in that case that the defendant was not entitled to a recitation of his constitutional rights prior to arrest and therefore that his roadside responses to questioning from the police were admissible. *Id.*  The Court subsequently has reaffirmed this holding. *See Pennsylvania v. Bruder,* 488 U.S. 9, 10-11, 109 S. Ct. 205, 206-207 (1988).

In the present case, the Michigan courts' rejection of Petitioner's *Miranda* claim was not unreasonable.  The police were investigating an automobile accident and Petitioner was not in custody when she made the statements at issue to Officer Jobe.

12

Under these circumstances, Petitioner's Fifth Amendment rights were not violated.

Petitioner's Fifth Amendment privilege against compulsory self-incrimination also was not violated based on Michigan's accident reporting statutes, MICH. COMP. LAWS ANN. §§ 257.622 and 257.624.  Neither statute requires someone involved in a motor vehicle accident to do anything more than report the accident to the police. Neither statute prohibits an officer from testifying at trial as to the statements he or she received from persons involved in an accident.  The Supreme Court has held that a state statute requiring a motorist to stop after an accident and provide limited information such as his or her name and/or address to police officers does not infringe the motorist's Fifth Amendment privilege against compulsory self-incrimination.  *California v. Byers,* 402 U.S. 424, 431, 91 S. Ct. 1535, 1539 (1971).

But even if Petitioner's statements were admitted in violation of her Fifth Amendment rights, she is not entitled to habeas relief because any such error would have been harmless.  For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate standard to apply "is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22 (1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  Officer Jobe testified that Petitioner told him that she had been driving the vehicle that caused the rear-end collision and that she had been drinking prior to the accident.  But at the trial Petitioner also testified that she consumed four beers

before driving and she admitted her involvement in the accident.  Moreover, Petitioner

agreed to a breathalyzer test and, according to that test, her blood alcohol content was

over Michigan's legal limit.  The Court therefore concludes that the admission of

Petitioner's statements to the police, even if admitted in violation of the Fifth

Amendment, was harmless.

   The Court therefore concludes that Petitioner is not entitled to habeas relief on her

third or fourth claims.

   **D.      Whether Petitioner's Conviction Violated The Ex Post Facto Clause**

   Petitioner claims that the *Ex Post Facto* Clause of the United States Constitution,

Art. I, § 10 cl. 1, was violated when she was convicted of OUIL II based on her prior

conviction for Operating a Motor Vehicle While Impaired ("OWI") because an earlier

OWI conviction could not be used to enhance an OUIL charge prior to the amendment of

the OUIL statute on October 1, 1999.

   The *Ex Post Facto* Clause is aimed at laws that retroactively alter the definition of

crimes or increase punishments for criminal acts. *California Dept. of Corr. v. Morales*,

514 U.S. 499, 504, 115 S. Ct. 1597, 1601 (1995)(internal citations omitted).  In order for

the *Ex Post Facto* Clause to apply, a criminal law or penal statute must be applied

retrospectively– that is, applied to events occurring before its enactment– and it must

disadvantage the offender affected by it. *Weaver v. Graham*, 450 U.S. 24, 29, 101 S. Ct.

960, 964  (1981).  Stated differently, an ex post facto law is one "'that makes an action

done before the passing of the law, and which was innocent when done, criminal; and

punishes such action,' or 'that aggravates a crime, or makes it greater than it was, when committed.'"  *Bouie v. City of Columbia*, 378 U.S. 347, 353, 84 S. Ct. 1697, 1702 (1964).

In *Gryger v. Burke*, 334 U.S. 728, 732, 68 S. Ct. 1256, 1258 (1948), the Court held that the *Ex Post Facto* Clause was not violated when one of the convictions used to classify the petitioner as a fourth felony habitual offender occurred prior to the passage of the Pennsylvania Habitual Criminal Act.  The Supreme Court reasoned that the enhanced sentence for the fourth violation was not an additional penalty for the earlier crime, but rather an increased penalty for the latest offense.  *Id.*  Similarly, Petitioner's enhanced conviction  for OUIL II based on her prior OWI conviction was not an additional penalty for the earlier crime, but instead an increased penalty for the later OUIL offense.

It is irrelevant that Petitioner's OWI conviction occurred at a time when that conviction could not be used to enhance an OUIL charge.  The conduct leading to Petitioner's OUIL II conviction occurred after the Michigan legislature amended the statute to provide that a prior OWI conviction could be used.  As the Ninth Circuit has commented: "[I]t is hornbook law that no ex post facto problem occurs when the legislature creates a new offense that includes a prior conviction as an element of the offense, as long as the other relevant conduct took place after the law was passed."  *Russell v. Gregoire,* 124 F. 3d 1079, 1088-89 (9th Cir. 1997).  Thus a state legislature can reclassify the various crimes constituting predicate offenses to enhance penalties for future criminal offenses without violating the *Ex Post Facto* Clause, so long as the reclassification is enacted prior to the date that the defendant commits the new criminal

offense that is subject to the enhanced penalties. *See, e.g., United States v. Glover*, 153

F.3d 749, 757 (D.C. Cir. 1998)(collecting cases); *Covington v. Sullivan,* 823 F. 2d 37, 39

(2nd Cir. 1987).

### E.    Whether Petitioner was Denied a Fair Appeal

In her sixth claim, Petitioner claims that she was denied a fair appeal because the

Macomb County Circuit Court denied her request for additional time to file a "quality

brief."[2] As the state court relied on a state procedural rule in denying Petitioner's request

for an extension of time to file her brief, this Court lacks the power to grant habeas relief

on this claim. *See Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001)(holding that

"[b]ecause state courts are the final authority on state law, federal courts must accept a

state court's interpretation of its statutes and its rules of practice.")

### F.    Petitioner's Claim Based on the Denial of Her Request for a Continuance

In her seventh claim, Petitioner alleges that the trial court erred in denying her

request for a continuance so that she could obtain new counsel, as she wanted her current

counsel, Mr. Zalecki, to testify at trial with respect to her sobriety on the day of the

accident.

The decision whether to grant a continuance is within the discretion of the trial

---

[2]Petitioner suggests that she did not exhaust this or her seventh claim with the Michigan courts. The AEDPA, however, permits a federal court to deny a claim on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(2).

judge.  *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003)(citing *Ungar v. Sarafite*, 376 U.S. 575, 598-90, 84 S. Ct. 841 (1964)).  "Absent proof of a violation of a specific constitutional protection, a habeas petitioner must show that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process."  *Id*.  The petitioner also must show that the denial resulted in actual prejudice to his or her defense.  *Id*.  One example of actual prejudice is where additional time would have made relevant witnesses available.  *Id*.

Petitioner cannot show that she was prejudiced by the trial court's refusal to grant her request for a continuance.  As discussed *supra* in addressing Petitioner's speedy trial claim, Mr. Zalecki's testimony concerning Petitioner's appearance of sobriety on the day of the accident would not have been exculpatory to her defense– and in fact properly would have been excluded as irrelevant– in light of Petitioner's own testimony that she had just finished drinking prior to the accident and that she was alone at the time.  Accordingly, Petitioner is not entitled to habeas relief based on this claim.

### G.      Petitioner's Challenge to Her Sentence

In her eighth and final claim, Petitioner alleges a number of errors in regards to her sentencing.  Those claims have been mooted, however, by Petitioner's completion of probation on March 26, 2004.  *See Lane v. Williams,* 455 U.S. 624, 630-31, 102 S. Ct. 1322, 1327 (1982)(holding that the petitioners' attack on their sentences was rendered moot since those sentences expired during the course of the proceedings).

### IV.     Conclusion

In conclusion, for the above reasons, the Court finds that Petitioner is not entitled to habeas relief.  Accordingly,

**IT IS ORDERED**, that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Gregory T. Zalecki, Esq.
Laura Moody, Esq.